UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISON

| | |
|---|---|
| KENNETH OWEN SCROGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-111-TWP-WGH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Kenneth O. Scrogham ("Mr. Scrogham"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "SSA", respectively), which found that he was not disabled and therefore was not entitled to Disability Insurance Benefits or Supplemental Security Income (collectively, "benefits") under the Social Security Act ("the Act").  42 U.S.C § 301 *et seq.*  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

**A.  Procedural History**

Mr. Scrogham initially applied for benefits on April 10, 2009, alleging a disability onset date of November 11, 2007.  R. at 12.  His application was denied initially on July 14, 2009, and upon reconsideration on September 8, 2009.  On May 24, 2011, Mr. Scrogham had a video hearing before an administrative law judge ("ALJ"), at which Mr. Scrogham, his wife, and a vocational expert ("VE") testified.  *Id.*  On June 6, 2011, the ALJ found that Mr. Scrogham has not suffered a disability as defined by the Act.  *Id.* at 22.  The Appeals Council denied Mr. Scrogham's request for review on July 27, 2012.  *Id.* at 1.  This leaves the ALJ's decision as the

final agency decision. 20 C.F.R. § § 404.955(a), 404.981. On August 2, 2011, Mr. Scrogham filed a complaint to seek judicial review of the ALJ's decision. R. at 8. Jurisdiction is proper in this Court. 42 U.S.C. § 405(g).

**B.     Factual Background**

At his hearing before the ALJ, Mr. Scrogham was fifty-three years old, six feet tall and weighed 303 pounds. R. at 42-43. He completed tenth grade and received a high school diploma from an adult education program. *Id.* at 44. His past work includes: general sales management for a car dealership, landscaping, excavation, contractor sales representation, landscape design, home improvement, restaurant labor, and working as a marketing director. *Id.* at 45. Mr. Scrogham's last position was for a pizza company, where he was the store manager, responsible for making the food and handling money. He left this position due to severe back pain. *Id.* at 49-50. While working at the pizza company, he weighed 401 pounds. *Id.* at 52. Mr. Scrogham testified that he could stand for approximately ten minutes. *Id.* at 53. He also testified to walking approximately one mile up to two times per day even after the alleged onset date; however, he had not been able to walk three to four months prior to the ALJ hearing. *Id.* at 53-54.

Mr. Scrogham has a history of spinal stenosis, and a 2004 x-ray revealed mild to moderate spondylosis. *Id.* at 305. In March 2009, a magnetic resonance imaging revealed degenerative spondylosis, which resulted in severe bilateral neural foraminal narrowing, moderate spinal stenosis at L2-3, and moderate to severe spinal stenosis at L3-4. *Id.* 406-07. In 2010, he underwent a two-level decompression and fusion at L2-3 and L3-4. *See id.* at 597, 599. Mr. Scrogham has also been diagnosed with and treated for diabetes, hypoglycemic episodes, and obesity, which the ALJ classified as severe impairments. *Id.* at 15, 258-61. The ALJ also

determined Mr. Scrogham had several non-severe impairments, none of which is specifically at issue on appeal. Additional facts will be supplied as necessary.

## II. DISABILITY STANDARD OF REVIEW

In order to qualify for disability benefits under the Act, Mr. Scrogham must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

SSA regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) has engaged in substantial gainful activity since the alleged disability onset date; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* Mr. Scrogham has the burden of proof during steps one through four, and only at step five does the burden of proof shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (internal quotation omitted); *see also Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the

evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d, 970, 972 (7th Cir. 2000).

### III. THE ALJ'S DECISION

The ALJ found that: (1) Mr. Scrogham met the insured status requirement through December 31, 2012 (R. at 14); (2) Mr. Scrogham has not engaged in substantial gainful activity since the alleged disability onset date (*id.)*; (3) Mr. Scrogham suffered from the following severe impairments: spinal stenosis, status post back surgery, diabetes, and obesity (*id.* at 14-16*)*; (4) Mr. Scrogham has no impairments that meets or equals any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id.* at 16); (5) Mr. Scrogham has a residual functional capacity ("RFC") to perform light work (*id.* at 16-20); (6) Mr. Scrogham is capable of performing past work (*id.* at 20); and (7) based on his age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy he could perform *Id.* at 21. Based on these findings, the ALJ concluded that Mr. Scrogham was not disabled.

### IV. DISCUSSION

Mr. Scrogham raises four issues on appeal. Specifically, he alleges that: (A) the ALJ violated the treating physician rule; (B) the ALJ erred in finding him not credible; (C) the ALJ failed to discuss his obesity; and (D) the ALJ erred in his step four analysis by incorrectly classifying Mr. Scrogham's past relevant work as sedentary, rather than light, as the VE testified.

**A.      Whether the ALJ violated the treating physician rule.**

Mr. Scrogham alleges that the ALJ violated the treating physician rule by assigning more weight to Disability Determination Bureau ("DDB") physicians, Drs. J.V. Corcoran and J. Sands, and less weight to his treating physician, Dr. George Alcorn. Dkt. 14 at 2.

### 1. Medical History and ALJ Findings

Mr. Scrogham alleges the following contribute to him not being able to work: degenerative discs, spinal stenosis, sleep apnea, high blood pressure, arthritis in his knee, atrial fibrillation, and restless leg syndrome ("RLS"). R. at 191. In 2008, he was referred to Dr. Alcorn to treat his sleep apnea, RLS, spinal stenosis, and weight problems. *Id.* at 194. Dr. Alcorn stated that Mr. Scrogham could barely walk, *id.* at 455, and referred Mr. Scrogham to Dr. John Guarnaschelli, who stated that Mr. Scrogham "has been unable to walk or stand with any degree of confidence since November 2007." *Id.* at 450. In August 2010, Dr. Alcorn opined that Mr. Scrogham could sit one hour during an eight hour workday, but could not lift any weight, squat, stand or walk. *Id.* at 594-595. In November 2009, Dr. Steven James, another treating physician, opined that Mr. Scrogham could not walk more than fifty yards without sitting down. *Id.* at 615. However, in November 2010, Dr. James stated that Mr. Scrogham could walk 1.3 miles twice daily, but he did not increase this distance because of pain in his knee. *Id.* at 597.

DDB examining physician, Dr. Richard P. Gardner, stated that Mr. Scrogham had full range of motion of his cervical spine and nearly full range of motion on his lumbar spine. He stated that Mr. Scrogham could transfer on and off the table independently, had full bilateral grip strength, and could walk in a stable manner without assistance. *Id.* at 517. Dr. Sands, also a DDB consulting physician, concluded that Mr. Scrogham could occasionally lift twenty pounds and frequently lift up to ten pounds. He also stated that he could stand or walk approximately six hours and sit approximately six hours during an eight hour workday. *Id.* at 520.

The ALJ gave the opinions of Drs. Corcoran and Sands significant weight because their findings were consistent with Mr. Scrogham's medical records, objective medical evidence (Dr. Gardner's findings), and the testimony concerning Mr. Scrogham's daily activities. *Id.* at 19. Conversely, the ALJ gave Dr. Alcorn's findings little weight, as they contradicted the objective medical evidence of examining physician Dr. Gardner concerning Mr. Scrogham's near full range of motion of the spine and transferring on and off of the exam table independently, along with other evidence. *Id.* at 20.

### 2.     Law and Discussion

The treating physician rule is a two-step process that an ALJ must undertake in assessing a claimant's RFC if a treating physician's opinion is in the record. First, the ALJ must determine if the physician's findings are supported by the medical findings and consistent with other substantial evidence on the record. If so, the opinion is to be given controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If not, the ALJ must consider several factors in deciding how much weight to give the opinion, including:

(i)     the frequency of examination and the length, nature and extent of the treatment relationship;
(ii)    the evidence in support of the treating physician's opinion;
(iii)   the consistency of the opinion with the record as a whole;
(iv)    whether the opinion is from a specialist; and
(v)     other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2nd Cir. 2004); 20 C.F.R. § 404.1527(d)(2).[1] "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to

---

[1] At the time the ALJ issued his decision, the treating physician rule was codified at 20 C.F.R. § 404.1527(d). Subsequently, the regulation was modified, and 20 C.F.R. § 404.1527(d), (e), and (f) were re-codified unchanged at 20 C.F.R. § 404.1527(c), (d), and (e), respectively.

believe, so long as substantial evidence supports that decision." *Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001).

The ALJ's decision to discount Dr. Alcorn's findings and grant significant weight to non-treating sources was reasonable and well-supported. The ALJ noted Mr. Scrogham's medical records stated that he worked on physically strenuous projects. R. at 20, 325, 543. Importantly, the ALJ also referenced Dr. Gardner's largely normal examination findings. *Id.* at 20, 516-518. From this, he reasonably concluded that Dr. Alcorn's opinion that Mr. Scrogham cannot sit or walk for any significant period of time was less plausible than the opinions of Drs. Corcoran and Sands, who concluded that Mr. Scrogham is capable of performing light work. *Id*. at 520. Consistency, or lack thereof, with record evidence is a valid reason to rely on or discount medical opinions. 20 C.F.R. § 404.1527(d)(4). The ALJ must discuss important regulatory factors in her decision, but need not discuss all of them. *See Filus v. Astrue,* 694 F.3d 863, 869 (7th Cir. 2012). Given that there is significant evidence to support the ALJ's weighing of the medical evidence, the Court affirms the ALJ's decision.

**B.      Whether the ALJ erred in her credibility finding**

**1.      Credibility of pain statements**

Mr. Scrogham also alleges that the ALJ was incorrect in finding that his statements were less than fully credible. Mr. Scrogham argues that because his doctors believed that he was in pain—as evidenced by the prescribed pain medication, referrals to specialists, and surgery—the ALJ should have accepted that as conclusive proof that his pain was severe. *See Ramey v. Astrue* 319 Fed. Appx. 426, 429 (7th Cir. 2009) ("claims of disabling pain can be corroborated by repeated diagnoses of severe pain . . . and the claimant's willingness to undergo (and physicians' willingness to order) invasive and burdensome treatment."). Additionally, Mr. Scrogham

7

alleges, the progressive nature of his spinal stenosis creates additional pain and interferes with his ability to perform full time work.

Assessing a claimant's credibility is a two-step process. First, the ALJ must determine whether the impairments found at Step Two could reasonably be expected to cause claimant's symptoms. Second, the ALJ must determine whether the claimant's statements about the intensity and persistence of symptoms are consistent with other evidence. 20 C.F.R. § 404.1529(a-c). Credibility determinations are entitled to special deference, since the ALJ is in a unique position to assess a claimant's veracity and forthrightness. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). As long as the ALJ builds a logical bridge between the evidence and his conclusion, *id*. at 1237-38, and the finding is not "patently wrong," *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), a reviewing court should not disturb this finding.

During his video hearing, Mr. Scrogham testified that he mainly sits at home during the day, unable to do anything productive due to the pain in his legs and back. R. at 51. Mr. Scrogham stated that he can only stand for approximately ten minutes before his legs go numb and that his knee keeps him from walking long distances. *Id.* at 53. Mr. Scrogham discussed that when he was walking for exercise he would have to take many breaks. *Id.* at 54. He also testified he has difficulty balancing, cannot lift objects, and can only sit for approximately fifteen to twenty minutes before needing to stand because of the numbness in his legs. *Id.* at 53-55.

The ALJ determined that Mr. Scrogham's impairments could reasonably be expected to cause his symptoms, but Mr. Scrogham's testimony surrounding the intensity, persistence, and limiting effect of the symptoms was not fully credible because it directly conflicted with the RFC assessment.[2] The Court finds that this decision was reasonable and well-supported for several

---

[2] While Mr. Scrogham does not challenge the ALJ's decision on this ground, the Court notes that this language has been sharply criticized as "meaningless boilerplate" that "gets things backwards" by predetermining a claimant's

8

reasons. First, the findings of Drs. Gardner and Sands contradict Mr. Scrogham's testimony. Dr. Gardner observed full range of motion in Mr. Scrogham's cervical spine and nearly full range of motion in his lumbar spine. *Id.* at 517. He also stated that Mr. Scrogham could transfer on and off the table independently, could perform a tandem walk, stand on his toes, and perform a half squat. *Id.* Dr. Sands concluded that Mr. Scrogham could occasionally lift twenty pounds and frequently lift up to ten pounds. *Id.* at 520. He also opined that Mr. Scrogham could stand or walk about six hours and sit about six hours in an eight hour workday. *Id.*

Second, the ALJ noted that the treatments Mr. Scrogham underwent had generally been successful and his symptoms were improving. *Id.* at 17. The ALJ also noted that there were discrepancies in what Mr. Scrogham reported that he could do to his doctors and inconsistent testimony about his activities and abilities. *Id.* at 18-19. Finally, the ALJ reasonably discounted Mr. Scrogham's credibility because he received unemployment benefits after the alleged disability onset date (*id.* at 177); to receive unemployment benefits, Mr. Scrogham had to represent that he was capable of and seeking full-time work.

### 2. Activities of daily living and full-time work

In his reply brief, Mr. Scrogham claims for the first time that the ALJ erred by equating his performance of activities of daily living with the ability to perform full-time work. Factors to be considered by an ALJ evaluating a claimant's complaint of pain or symptoms, in addition to objective medical evidence, include:

(i) the claimant's daily activities;
(ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

---

RFC and judging the claimant's credibility against that RFC. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). However, such boilerplate language does not by itself necessitate remand, so long as the court can fairly trace the ALJ's path of reasoning. *Richison v. Astrue*, 462 Fed. Appx. 622, 625-26 (7th Cir. 2012). The ALJ, as discussed *infra*, engaged in a thorough and well-supported credibility analysis, and the court finds that the use of boilerplate language is harmless.

9

      (iii)  factors that precipitate and aggravate the symptoms;
      (iv)  the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
      (iv)  treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
      (v)  any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (*e.g.,* lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
      (vi)  any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186, at *3 (Jul. 2, 1996).

The ALJ considered Mr. Scrogham's treatment, activities of daily living, testimony about his abilities, and the objective medical evidence. While the ALJ did refer to Mr. Scrogham's daily life activities when making her assessment of Mr. Scrogham's disability, she focused mainly on Mr. Scrogham's medical records and the findings of Drs. Corcoran and Sands when determining Mr. Scrogham's RFC. The ALJ also examined the other required pain factors, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and found Mr. Scrogham's activities of daily living, surgical and medication history, along with the objective medical evidence, were inconsistent with Mr. Scrogham's allegations regarding the severity of his pain. R. at 17-20. This was a reasonable, well-supported conclusion, of which activities of daily living was only one factor. The Court therefore finds that the ALJ did not err in her consideration of activities of daily living.

**C.**    **Discussion of Mr. Scrogham's obesity**

Mr. Scrogham also alleges that the ALJ improperly evaluated his obesity by not considering its effects during the assessment of the claim and when assessing his RFC. While obesity is not itself a disabling condition, SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002), the

10

ALJ must consider the effects of a claimant's obesity throughout the five-step process. *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004) (citing SSR 00-3p, 2000 WL 33952015 (May 15, 2000)). This includes considering any obesity-related impairments supported by evidence. However, an ALJ need not explicitly discuss obesity so long as she relies on the opinion of doctors who discuss a claimant's obesity. *Skarbek*, 390 F.3d at 504.

The ALJ listed Mr. Scrogham's obesity as a severe impairment at step two. R. at 14-15. The ALJ also factored his obesity into the RFC assessment by considering all of Mr. Scrogham's symptoms and relying on the opinions of Drs. Corocoran and Sands, who did not opine any additional obesity-related work limitations. *Id.* at 16, 19. Since the ALJ reasonably considered Mr. Scrogham's obesity, the Court finds she complied with SSR 02-01p.

**D.     Whether the ALJ erred by improperly job classifying prior relevant work**

Mr. Scrogham finally claims that the ALJ classifying his prior work as an auto sales manager as sedentary work, rather than light work, R. at 20, is reversible error. He alleges that, given his age and education, he would be considered disabled if he is restricted to sedentary work. Dkt. # 21 at 3 (citing SSA GRID Rule ("GRID") 201.12).

Mr. Scrogham's argument fails for two reasons. First, the ALJ found in Mr. Scrogham's RFC that he could perform light work, and his past relevant work was skilled and semiskilled. R. at 16, 20. Mr. Scrogham's age places him in the closely approaching advanced age category, and he has the equivalent of a high school education. *Id.* at 44. He would therefore not meet GRID 201.12 and would not be considered disabled on that basis.

Second, the error in classifying the auto sales job is harmless because the ALJ found that Mr. Scrogham could perform the prescribed range of light work. *Id.* at 16 (citing 20 C.F.R. § 404.1567(b). She also determined that Mr. Scrogham could return to his past work as a sales

agent and restaurant manager, both of which were light work. *Id*. at 20. From the VE's testimony, the ALJ determined that Mr. Scrogham could, in fact, perform other sedentary and light work. *Id.* at 20-21, 72-75. While the VE testified that Mr. Scrogham's skills in the auto industry were not transferable because of the unique aspects of this industry, skills from Mr. Scrogham's other jobs were transferable. *Id.* at 74. Since the VE found that Mr. Scrogham could perform past work and stated that he did, in fact, have transferable skills, the ALJ's conclusions at Steps Four and Five were supported by substantial evidence, and incorrectly classifying the job did not impact the disposition. *Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000).

## V. **CONCLUSION**

For the foregoing reasons, the ALJ's decision that Mr. Scrogham is not entitled to receive benefits is **AFFIRMED**. Judgment consistent with this Entry shall now issue.

**SO ORDERED**.

Date:  09/23/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Edward Jenner
JENNER, PATTISON, HENSLEY & WYNN, LLP
wjenner@wjennerlaw.net

Thomas E. Kieper
OFFICE OF THE UNITED STATES ATTORNEY
tom.kieper@usdoj.gov